FILED
COURT OF APPEALS
DIVISION II

2013 JUN 19 AM 8:31

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| VIEWPOINT-NORTH STAFFORD LLC, a Delaware limited liability company, VIEWPOINT AT SHOREWOOD LLP, a Washington limited liability partnership, ROBERT S. ROBERTS and ANNE G. ROBERTS, | No. 43018-5-II |
| Appellants, | |
| v. | |
| CB RICHARD ELLIS, INC., a Delaware corporation, ARIA ASSET MANAGEMENT LLC; MICHELLE E. BROCK, JAMES N. DONNERSTAG, MERRIAH J. HARKINS, JULIE BROCK HERZOG and DANIEL W. BROCK, | PUBLISHED OPINION |
| Respondents. | |

JOHANSON, A.C.J. — Robert and Anne Roberts (the Roberts) sued real estate broker

James Donnerstag and his employer, CB Richard Ellis, Inc.,[1] under The Securities Act of

Washington ("Act").[2] The Roberts alleged (1) that Donnerstag made material misrepresentations

---

[1] We refer to both Donnerstag and CB Richard Ellis, Inc. as "Donnerstag" unless noted.

[2] Chapter 21.20 RCW.

and omissions in selling the Roberts a DBSI[3] property interest; (2) that he sold unregistered securities as an unregistered securities broker; and (3) that CB Richard Ellis, Inc., as his employer, incurred liability because it controlled him as a seller under the Act. The trial court granted Donnerstag summary judgment after concluding that Donnerstag did not sell the DBSI property to the Roberts. We affirm the trial court's summary judgment in favor of Donnerstag and CB Richard Ellis because the Roberts failed to show that Donnerstag substantially contributed to the sale of the property and therefore Donnerstag was not a seller under the Act. Accordingly, CB Richard Ellis, Inc. did not control a securities seller.

## FACTS

In 2007, the Roberts sold a property and sought to defer their capital gains taxes on that sale, under section 1031 of the United States Internal Revenue Code,[4] by purchasing another property with the sale proceeds. This type of transaction is known as a "1031 exchange." The Roberts sought Donnerstag's assistance to identify potential replacement properties for the 1031 exchange.

Donnerstag informed the Roberts about DBSI's tenancy-in-common investment program, and Robert Roberts expressed interest. Donnerstag then e-mailed DBSI, stating that the Roberts were interested in learning about DBSI's investments. A DBSI sales executive, David Rottman, worked with the Roberts to find a suitable investment, and the Roberts decided that DBSI North Stafford had what they sought in an investment property. The Roberts engaged an attorney for legal advice about the potential investment. They also consulted their son, Brad Roberts, an insurance broker experienced in buying and selling securities with the assistance of securities

---

[3] DBSI, Inc. was a real estate management company.

brokers. Believing the information provided by DBSI was sufficiently informative, the Roberts signed several transactional documents and invested in DBSI North Stafford without further consulting Donnerstag. After DBSI sold North Stafford to the Roberts, CB Richard Ellis, Inc. and Donnerstag received a $72,856 fee from the Roberts.

After DBSI went bankrupt, the Roberts sued Donnerstag and others for violating the Act. They claimed that Donnerstag, as a seller of the DBSI investment, (1) misrepresented and omitted material information regarding the sale, (2) sold an unregistered security, and (3) acted as an unregistered broker-dealer and salesperson. Donnerstag filed an unsuccessful CR 12(b)(6) motion to dismiss.

After a year of discovery, Donnerstag moved for summary judgment. He argued that the Roberts' claims under the Act fail because Donnerstag was neither a "seller" nor was CB Richard Ellis, Inc. a "control person" in the DBSI North Stafford transaction—a requirement for an action under the Act.[5]

Donnerstag filed a declaration from a securities law expert who opined that Donnerstag did not act as a seller, but as a finder—one who provided the name and contact information of a securities seller. The expert added that, in the securities industry, a finder need not register as a broker-dealer or salesperson and that Donnerstag's finder status was not affected by receipt of a fee contingent on the consummation of the transaction.

Donnerstag stated that he had long known Robert Roberts and in 2007 Robert Roberts mentioned his interest in a 1031 exchange. As a result, over several months Donnerstag identified properties that might interest the Roberts for 1031 exchange purposes. Donnerstag

---

[4] 26 U.S.C. § 1031.

said that he attended a seminar for real estate brokers that included information about DBSI's tenancy-in-common program, and because he knew the Roberts' 1031 exchange deadline was quickly approaching, he felt obliged to inform them of DBSI's program. When Robert Roberts expressed interest in DBSI, Donnerstag e-mailed DBSI and provided the Roberts' contact information. DBSI then worked with the Roberts on the 1031 exchange, and Donnerstag knew nothing further regarding what DBSI properties the Roberts were considering until after they had settled on DBSI North Stafford. Donnerstag declared that the Roberts did not consult him about the DBSI property nor did they ask him to perform due diligence on the investment on their behalf. At the time, Donnerstag did not anticipate that his involvement in the sale would be construed as a securities transaction.

Donnerstag's summary judgment motion included various exhibits and Robert Roberts's deposition. At deposition, Robert Roberts testified that he had worked in real estate for 50 years and that he did not believe the DBSI sale constituted a securities transaction but, rather, a real estate transaction. Nor did he consider Donnerstag to be the seller of the property or a seller of securities generally—he considered DBSI to be the seller. Consistent with Donnerstag's recollection, Robert Roberts explained that he had asked Donnerstag and other real estate brokers to identify potential 1031 exchange properties. Donnerstag presented the Roberts with options but none suited them until they learned about DBSI's tenancy-in-common program. DBSI's Rottman then contacted them and explained that DBSI was "a great company, it's safe, conservative, they've been in business 27, 28 years, and there are a number of properties [the

---

[5] Because this argument is dispositive, we do not include Donnerstag's additional claims.

Roberts] could consider investing in." Clerk's Papers (CP) at 119. Rottman also provided the Roberts written materials about DBSI and its properties.

Robert Roberts evaluated the DBSI North Stafford information, which included a confidential private placement memorandum explaining the offering's terms and associated risks. Robert Roberts explained that the Roberts learned nothing from Donnerstag about DBSI that they did not learn from Rottman. He also testified that he reviewed various DBSI properties before concluding that DBSI North Stafford was a good fit for their investment purposes.

According to Robert Roberts, Donnerstag did not refer, investigate, or examine any DBSI properties for the Roberts. He explained that Donnerstag had no further involvement with the Roberts from the point of the referral until after the transaction, and neither Donnerstag nor anyone at CB Richard Ellis, Inc. encouraged the Roberts to invest in DBSI North Stafford.

Donnerstag also included Anne Roberts's deposition, which echoed that of her husband. She stated that Donnerstag did not directly provide any information about DBSI North Stafford. She expressed that they obtained all of the property information from a DBSI property prospectus. She added that she did not communicate with Donnerstag about DBSI North Stafford until after the Roberts had invested in it and that the Roberts sued Donnerstag because "the price of the property was misrepresented." CP at 204. She acknowledged, however, that "that misrepresentation . . . was contained in the written materials provided . . . by DBSI," and "Mr. Donnerstag never made a representation . . . regarding the price of the property." CP at 204-05. She further admitted that the Roberts had an opportunity to question Rottman before investing in the property.

Brad Roberts's deposition stated that he had experience buying and selling securities with the assistance and advice of securities brokers. He never attempted to contact Donnerstag or DBSI before his parents invested in DBSI North Stafford, and he acknowledged that after reviewing the DBSI North Stafford materials, he opined to his parents that the investment "sounded pretty good." CP at 239.

The Roberts' response argued that their claims should proceed to trial under the Act because Donnerstag and CB Richard Ellis, Inc. acted as a seller and control person. They included Donnerstag's and Robert Roberts's depositions. Donnerstag stated that he had (1) never been licensed to sell securities, (2) worked with Robert Roberts for years, and had communicated with Roberts about 50 times while assisting him in finding a 1031 exchange property, and (3) developed a good sense of what Roberts sought in an investment. Donnerstag also recounted the seminar where he learned of DBSI's tenancy-in-common program and recalled that DBSI invited real estate brokers to refer potential investors in exchange for a referral fee.

After referring the Roberts to DBSI, Donnerstag spoke with Rottman and DBSI's Michelle Brock about a referral fee. Then following the DBSI North Stafford sale, the Roberts paid $72,856.25 to CB Richard Ellis, Inc. for the referral. Donnerstag received about half of the referral fee.

Robert Roberts stated that he sued Donnerstag and CB Richard Ellis, Inc. because Donnerstag represented to the Roberts that DBSI was a "company that had been in business for 27 years with a good track record, and it was a safe, conservative investment, and it had a guaranteed return, I believe 7 percent." CP at 498. He also said that Donnerstag encouraged

6

them to pursue a 1031 exchange property rather than to pay capital gains taxes on their prior property sale.

In granting summary judgment to Donnerstag and CB Richard Ellis, the trial court stated:

> I think that [Donnerstag] was working with the Roberts to find an investment for them to avoid the tax liability. He had offered a couple of different options. They were not taken. [Donnerstag] had gone to the seminar, heard about this DBSI, contacted the Roberts, let them know, contacted DBSI. The two came together. He got a fee out of it, a pretty substantial fee. I think that everything that was done, all the decisions that were made by the Roberts, were made based upon the information provided to them by DBSI. I don't find that Mr. Donnerstag or CBRE were security sellers. I will grant the motion for summary judgment.

Verbatim Report of Proceedings (Dec. 9, 2011) at 22-23. Because all the Roberts' claims under the Act required that Donnerstag be a securities seller, the trial court's finding that Donnerstag was not a seller precluded the remaining claims. The Roberts timely appeal the trial court's entry of final judgment.

## ANALYSIS

The Roberts argue that the trial court erred in granting summary judgment to Donnerstag and CB Richard Ellis, Inc. because the trial court erroneously concluded as a matter of law that Donnerstag was not a seller and that CB Richard Ellis, Inc. did not therefore control a seller under the Act. The Roberts argue that because Donnerstag referred them to DBSI and received a referral fee, Donnerstag should be considered a seller. We disagree and conclude that the trial court properly granted summary judgment after finding that Donnerstag was not a securities seller.

A. Standards of Review and Rules of Law

We review summary judgment orders de novo. *Sheikh v. Choe*, 156 Wn.2d 441, 447, 128 P.3d 574 (2006). Trial courts properly grant summary judgment where the pleadings and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). Questions of fact may be determined on summary judgment as a matter of law only where reasonable minds could reach but one conclusion. *Alexander v. County of Walla Walla*, 84 Wn. App. 687, 692, 929 P.2d 1182 (1997). When reviewing a grant of summary judgment, we consider solely the issues and evidence the parties called to the trial court's attention on motion for summary judgment. RAP 9.12.

The Act provides that any person selling securities in violation of the Act is liable to the person buying the security. RCW 21.20.430(1). A defendant's status as a seller is necessarily a question of fact. *Haberman v. Wash. Pub. Power Supply Sys.*, 109 Wn.2d 107, 132, 744 P.2d 1032, 750 P.2d 254 (1987). The Act also provides that every person who directly or indirectly controls a seller who sells a security in violation of the Act is jointly and severally liable with the seller. RCW 21.20.430(3).

Our Supreme Court has outlined a three-part test to determine whether a defendant's acts are a "substantial contributive factor" in the sale of a security, thus making the defendant a seller under the Act. First, we look at the other factors, aside from the defendant's alleged actions, that contributed to the sale and the extent of the effect which they have in producing the sale. *Haberman*, 109 Wn.2d at 131. Second, we look at whether the defendant's conduct has created a force or series of forces that are in continuous and active operation up to the time of sale, or whether the defendant's conduct has created a situation harmless unless acted upon by other

forces for which the defendant is not responsible. *Haberman*, 109 Wn.2d at 131-32. Third, we consider whether a time lapse occurred between the defendant's conduct toward the sale and the time of the sale. *Haberman*, 109 Wn.2d at 132. Under this test, the law may impose liability on someone in addition to the immediate seller if the person's participation was a substantial contributing factor in the violation of the Act. *Haberman*, 109 Wn.2d at 130.

This substantial contributive factor test applies only to persons who have the attributes of a seller. *Brin v. Stutzman*, 89 Wn. App. 809, 829, 951 P.2d 291, *review denied*, 136 Wn.2d 1004 (1998). And the absence of any real promotional conduct on the part of a defendant supports the conclusion that the defendant was not a substantial contributive factor. *See Shinn v. Thrust IV, Inc.*, 56 Wn. App. 827, 851, 786 P.2d 285, *review denied*, 114 Wn.2d 1023 (1990).

## B. Analysis

As a threshold matter we note that the Roberts rely on two undisputed facts to support their claim that Donnerstag was a securities seller: (1) Donnerstag introduced them to DBSI and (2) Donnerstag received a fee. Even recognizing that Donnerstag introduced the Roberts to DBSI and received a fee, we agree with the trial court and conclude as a matter of law that Donnerstag did not sell the subject property to the Roberts.

First, applying *Haberman*, we look to see whether additional factors, other than Donnerstag's referral, contributed to the DBSI North Stafford sale. *See Haberman*, 109 Wn.2d at 131. After Donnerstag's referral, DBSI's Rottman promoted his company to the Roberts, providing that DBSI was a "great company, it's safe, conservative" that has "been in business 27, 28 years." CP at 119. DBSI, without Donnerstag's knowledge, presented properties—including DBSI North Stafford—to the Roberts for a 1031 exchange. In fact, the Roberts reviewed these

DBSI properties before settling on DBSI North Stafford, and Donnerstag played no role in this selection process. Accordingly, a number of other factors beyond Donnerstag's referral contributed to the Roberts' DBSI North Stafford investment.[6] Therefore, under the first part of the *Haberman* test, Donnerstag's referral was not a substantial contributive factor to the sale under the Act. *See Haberman*, 109 Wn.2d at 131.

Second, we consider whether Donnerstag's conduct created a continuous and active operation up to the time of sale, or whether Donnerstag's conduct created a harmless situation unless acted on by others for whom Donnerstag was not responsible. *See Haberman*, 109 Wn.2d at 131-32. Here, Donnerstag's referral does not demonstrate that he engaged in a continuous or active operation up to the time of sale. Rather, his referral created a harmless situation until acted on by DBSI, over whom Donnerstag had no responsibility. He learned of the DBSI tenancy-in-common program, determined that the Roberts might be interested in it, and then provided the Roberts' contact information to DBSI. After connecting DBSI and the Roberts, Donnerstag played no role in the Roberts' DBSI North Stafford investment. Robert Roberts acknowledged that Donnerstag did not identify DBSI North Stafford as a potential investment, nor did he encourage the Roberts to invest in it. In fact, Robert Roberts explained that he did not

---

[6] Additional factors unrelated to Donnerstag contributed to the Roberts' DBSI investment. Before investing in DBSI North Stafford, the Roberts had to qualify as accredited investors and receive lender-approval, both of which occurred without Donnerstag's assistance or knowledge. The Roberts conducted due diligence on DBSI North Stafford and signed a due diligence completion acknowledgment, again, without Donnerstag's involvement. The Roberts consulted legal counsel about the investment. Robert Roberts even conceded that were it not for Rottman's involvement in providing information about potential investments, Michelle Brock's providing documents to finalize the transaction, and Aria Asset Management's involvement, the Roberts would not have invested in DBSI North Stafford. Finally, tax law, not Donnerstag, dictated the Roberts' deadline for purchasing a replacement property to satisfy their 1031 exchange. 26 U.S.C. § 1031.

even consider Donnerstag to be a seller of DBSI North Stafford. Accordingly, the second *Haberman* factor also demonstrates that Donnerstag's conduct was not a substantial contributing factor to the sale. *See Haberman*, 109 Wn.2d at 131-32.

Third, we consider how much time elapsed between Donnerstag's referral, his last contact with the Roberts before the transaction, and the DBSI North Stafford purchase to demonstrate that Donnerstag's conduct was not a substantial contributing factor in the Roberts' purchase. *See Haberman*, 109 Wn.2d at 132. Donnerstag referred the Roberts to DBSI in a March 31, 2008 e-mail. Robert Roberts acknowledged that following the referral, Donnerstag had no participation in the transaction. The Roberts submitted to DBSI the final purchase agreement and tenancy-in-common agreement for the property on April 14, at least two weeks later. During these two weeks, the Roberts identified and settled on the DBSI North Stafford investment without Donnerstag's knowledge, advice, or input. Accordingly, this time lapse between Donnerstag's referral and the sale also fails to show that Donnerstag's conduct was a substantial contributive factor in the Roberts' investment. *See Haberman*, 109 Wn.2d at 132.

In sum, Donnerstag's mere referral of the Roberts to DBSI does not amount to a substantial contributive factor in the Roberts' DBSI North Stafford investment; nor did it amount to real promotional conduct. Because Donnerstag was not a substantial contributive factor in the DBSI North Stafford sale, the trial court properly concluded that he was not a seller under the Act. Consequently, CB Richard Ellis, Inc. necessarily did not control a seller under the Act, and the Roberts' claim against CB Richard Ellis, Inc. also fails.

No. 43018-5-II

We affirm.

_____
Johanson, A.C.J.

We concur:

_____
Hunt, J.

_____
Quinn-Brintnall, J.

12