Submitted November 27, 2012, affirmed August 21,
petition for review allowed December 12, 2013 (354 Or 597)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JACKELIN GONZALEZ-VALENZUELA,
*Defendant-Appellant.*

Washington County Circuit Court
C100316CR; A146278

308 P3d 1096

Peter Gartlan, Chief Defender, and Anne Fujita Munsey, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Matthew J. Lysne, Assistant Attorney-in-Charge, filed the brief for respondent.

Before Ortega, Presiding Judge, and Haselton, Chief Judge, and Sercombe, Judge.

SERCOMBE, J.

Haselton, C. J., concurring.

**SERCOMBE, J.**

Under ORS 163.575(1)(b), a "person commits the crime of endangering the welfare of a minor if the person knowingly * * * [p]ermits a person under 18 years of age to enter or remain in a place where unlawful activity involving controlled substances is maintained or conducted." Defendant was convicted of two counts of endangering the welfare of a minor in connection with an incident where she possessed controlled substances in her purse while riding in an automobile with her two children. Defendant appeals, assigning error to the trial court's denial of her motion for judgment of acquittal on those charges.

The issue presented by this case is whether defendant's possession, storage, concealment, or movement of controlled substances in the automobile constituted "maint[e-nance]" of or "conduct[ing]" "unlawful activity involving controlled substances" under the statute.[1] We conclude that there was sufficient evidence that defendant's actions violated ORS 163.575(1)(b); the trial court therefore did not err in denying defendant's motion. Accordingly, we affirm the judgment of conviction.

The facts pertinent to defendant's actions in the automobile are few and undisputed. Defendant was a back-seat passenger in a borrowed automobile that was stopped for a traffic violation. Defendant's 17-year-old daughter, B, was driving, and defendant's five-year-old daughter, D, was in the front passenger seat. The purpose of the trip was to drop off D and then B at their respective schools.

During the course of the traffic stop, defendant consented to a search of her purse. That search revealed drugs (methadone, methamphetamine, and heroin) classified as "controlled substances" under ORS 475.005(6).[2] Defendant was subsequently charged by information with various

---

[1] In moving for judgment of acquittal, defendant did not contest that she permitted her two children to enter or remain in the automobile and that the automobile was a "place" under ORS 163.575(1)(b). We do not reach, then, the question of whether the record created jury issues as to those elements of the crime.

[2] The police officer who conducted the search testified that he also uncovered and seized oxycodone from the purse. Defendant was acquitted of the charge of possession of that controlled substance, ORS 475.752(3).

drug-possession crimes and, as pertinent on appeal, with two counts of endangering the welfare of a minor under ORS 163.575(1)(b). She sought, without success, to suppress the evidence seized from her purse, arguing that the warrantless search was unjustified because her consent was the product of unlawful police conduct.

After a short bench trial, defendant contended in closing argument that she should be acquitted of the charges of endangering the welfare of a minor because "something more * * * than mere possession" of drugs is needed to establish the maintenance or conducting of "unlawful activity involving controlled substances" under ORS 163.575(1)(b).[3] Defendant argued that "mere possession" of drugs is passive rather than active conduct and therefore does not constitute "unlawful activity." She further argued that the remaining provisions of ORS 163.575(1) define other types of endangerment of the welfare of a minor by describing active conduct—providing implicit support for her proffered construction of subsection (1)(b) of that statute.[4]

---

[3] In a bench trial, if the defendant "clearly raises" the issue of the sufficiency of the evidence in closing argument, the contention is evaluated on appeal as if the defendant had made a motion for judgment of acquittal. *State v. Forrester*, 203 Or App 151, 155, 125 P3d 47 (2005), *rev den*, 341 Or 141 (2006). We treat defendant's closing argument in the same way—that is, as a motion for judgment of acquittal.

[4] ORS 163.575(1) provides:

"A person commits the crime of endangering the welfare of a minor if the person knowingly:

"(a) Induces, causes or permits an unmarried person under 18 years of age to witness an act of sexual conduct or sadomasochistic abuse as defined by ORS 167.060; or

"(b) Permits a person under 18 years of age to enter or remain in a place where unlawful activity involving controlled substances is maintained or conducted; or

"(c) Induces, causes or permits a person under 18 years of age to participate in gambling as defined by ORS 167.117; or

"(d) Distributes, sells, or causes to be sold, tobacco in any form to a person under 18 years of age; or

"(e) Sells to a person under 18 years of age any device in which tobacco, marijuana, cocaine or any controlled substance, as defined in ORS 475.005, is burned and the principal design and use of which is directly or indirectly to deliver tobacco smoke, marijuana smoke, cocaine smoke or smoke from any controlled substance into the human body including but not limited to [listed drug-delivery devices]."

The state rejoined that "mere possession is an activity. Possession is taking control of something, and having it with you when you're going somewhere is sufficient to prove that it's an activity." The trial court concluded that "transporting controlled substances in a purse from one place to another is an activity" and convicted defendant of both charges of endangering the welfare of a minor based on the presence of the two children in the automobile. Defendant appeals.

As noted, defendant assigns error to the trial court's denial of her motion for judgment of acquittal. "We review the denial of a motion for judgment of acquittal for errors of law, considering the facts and any reasonable inferences in the light most favorable to the state to determine whether any rational trier of fact could have found every element of the offense beyond a reasonable doubt." *State v. Reeves*, 250 Or App 294, 296, 280 P3d 994, *rev den*, 352 Or 565 (2012).

Defendant argues that "the plain meaning of the word 'activity' is 'the quality or state of being active.' *Webster's Third New Int'l Dictionary* 22 (unabridged ed 2002). 'Active' in turn means 'characterized by action rather than by contemplation or speculation,' or 'productive of action or movement.' *Id.*" Defendant reiterates that her possession of controlled substances was passive rather than active conduct and, therefore, not an "activity involving controlled substances" under ORS 163.575(1)(b). She further reiterates that the other provisions of ORS 163.575(1) provide contextual support for her proffered construction of ORS 163.575(1)(b).

The state argues that ORS 163.575(1) should be construed in the context of the entire 1971 criminal law revision, Or Laws 1971, ch 743, of which it is a part. At the time of its adoption, ORS 163.575(1)(b) (1971) proscribed permitting a minor to be in a place "where unlawful narcotic or dangerous drug activity [was] maintained or conducted." Or Laws 1971, ch 743, § 177.[5] Another statute

---

[5] ORS 163.575(1)(b) has been amended twice since 1971. The applicable age was changed from 21 to 18 years. Or Laws 1973, ch 827, § 20. The word "he" was changed to "the person[,]" and "unlawful narcotic or dangerous drug activity" was replaced by "unlawful activity involving controlled substances." Or Laws 1979, ch 744, § 8.

pertaining to the offense of "criminal activities in drugs" was enacted as part of the same revision. *Id.* § 274. *Former* ORS 167.207(1) (1971), *repealed by* Or Laws 1977, ch 745, § 54, defined the offense of "criminal activities in drugs" to be occasions when a defendant "knowingly and unlawfully manufactures, cultivates, transports, possesses, furnishes, prescribes, administers, dispenses or compounds a narcotic or dangerous drug." The state contends that that meaning of "criminal activities in drugs" (notably including both possession and transportation of drugs) was intended by the legislature to be "unlawful narcotic or dangerous drug activity" under ORS 163.575(1)(b) (1971). As supportive legislative history, the state points to commentary in the 1970 draft criminal law revision report that tied the proposed "criminal activities in drugs" statute to the proposed child-endangerment statute, ORS 163.575 (1971).

We agree with the state. Based on the text of ORS 163.575(1), its relationship to contemporaneously adopted statutes, and its legislative history, we conclude that defendant's continued possession, transportation, storage, and concealment of the controlled substances constituted the maintenance of an "unlawful activity involving controlled substances"—that is, a continuance of her original commission of the act of possession of the controlled substances by the continued exercise of dominion and control over them.

When construing a statute, we examine the text of the statute in context, along with any relevant legislative history, to discern the legislature's intent. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). The context of a statute includes, "among other things, other provisions of the statute of which the disputed provision is a part." *Hale v. Klemp*, 220 Or App 27, 32, 184 P3d 1185 (2008). It can also include, as pertinent here, other parts of the session law that enacted the statute in question. *See Weldon v. Bd. of Lic. Pro. Counselors and Therapists*, 353 Or 85, 95, 293 P3d 1023 (2012) ("The context of a statute includes all provisions contained in the session law, including parts of the session law not codified as part of the statute being interpreted.").

Beginning with the text, as noted, ORS 163.575(1)(b) provides that a "person commits the crime of endangering the welfare of a minor if the person knowingly * * * [p]ermits a person under 18 years of age to enter or remain in a place where unlawful activity involving controlled substances is maintained or conducted." The parties focus their arguments on whether defendant's conduct inside of the automobile constituted an "unlawful activity involving controlled substances." That focus is too narrow.

The statute covers conduct that permits the presence of a minor in a place where "unlawful activity * * * is *maintained or conducted*." (Emphasis added.) The precise inquiry is not whether unlawful activity exists in a place, but whether that activity is being "maintained or conducted" therein. "Maintain" means "1 : to keep in a state of repair, efficiency, or validity : preserve from failure or decline * * * 3 : to persevere in : carry on : keep up : CONTINUE." *Webster's* at 1362. By contrast, the verb "conduct" means "[2] b : to have the direction of : RUN, MANAGE, DIRECT <~s a scientific experiment> <~s a daily newspaper column> <~s a small business enterprise>." *Id.* at 474. Thus, unlawful activity in a place can be "maintained" through a continuation of the status of an unlawful act or "conducted" if the unlawful activity is immediately occurring under the direction of a person.

Viewed in that fashion, defendant's conduct in possessing, transporting, storing, and concealing the controlled substances in her purse maintained the status of her possession of those substances. ORS 475.752(3) makes it unlawful "for any person knowingly or intentionally to possess a controlled substance" with certain exceptions that do not apply here. At least the initial possession of controlled substances is an "unlawful activity involving controlled substances" under ORS 163.575(1)(b). "Possess" is defined in a related statute to mean "to have physical possession or otherwise to exercise dominion or control over property." ORS 161.015(9). Sometime prior to the traffic stop, then, defendant actively came into physical possession of the controlled substances by exercising dominion and control over them. She continued and maintained that status in the automobile by exercising dominion over the controlled substances through

carrying, storing, and concealing those substances in her purse. Putting aside the issue of whether defendant "conducted" unlawful activities while in the automobile, at the very least she maintained the status of the unlawful activity of possessing the controlled substances while present in the automobile. Under the plain meaning of the word "maintain," then, defendant's conduct violated ORS 163.575(1)(b).[6]

That construction of ORS 163.575(1)(b)—that continued possession and control over a controlled substance is a situation where "unlawful activity involving controlled substances is maintained or conducted"—is supported by the context and legislative history of the statute. As noted, an earlier version of ORS 163.575(1)(b) was adopted by the legislature in 1971 as part of a complete revision of the Oregon Criminal Code. Or Laws 1971, ch 743, § 177. As originally enacted, ORS 163.575(1)(b) (1971) provided that a "person commits the crime of endangering the welfare of a minor if he knowingly *** [p]ermits a person under 21 years of age to enter or remain in a place where unlawful narcotic or dangerous drug activity is maintained or conducted." As part of the same revision, the legislature enacted *former* ORS 167.207(1), which provided:

> "A person commits the crime of criminal activity in drugs if he knowingly and unlawfully manufactures, cultivates, transports, possesses, furnishes, prescribes, administers, dispenses or compounds a narcotic or dangerous drug."

We generally assume that the same words within a statute or in related statutes mean the same thing. "When the legislature uses the identical phrase in related statutory provisions that were enacted as part of the same law, we interpret the phrase to have the same meaning in both sections." *Tharp v. PSRB*, 338 Or 413, 422, 110 P3d 103 (2005); *see also State v. Cloutier*, 351 Or 68, 99, 261 P3d 1234 (2011) ("Although, in the abstract, there is nothing that precludes

---

[6] Under the circumstances of this case, defendant's actions were the only actions in the automobile "place" that could have been the maintenance or conducting of unlawful activity involving controlled substances. We do not imply that, and express no opinion as to whether, the actor who "[p]ermits a person under 18 years of age to enter or remain in a place" must be the same person who maintains or conducts the unlawful activity in that place.

the legislature from defining the same terms to mean different things in the same or related statutes, in the absence of evidence to the contrary, we ordinarily assume that the legislature uses terms in related statutes consistently.").

ORS 163.575(1)(b) (1971) (relating to criminal child-welfare endangerment by exposure to "unlawful * * * drug activity") and *former* ORS 167.207(1) (specifying the particular actions that were "criminal activities in drugs") are related statutes. Both statutes were adopted as part of an integrated criminal code, and both statutes relate to the same general subject—that is, both criminalize behavior that is, or is associated with, narcotic or dangerous drug "activity." Given that relationship, we infer that the legislature intended a common meaning for drug-related "activity" or "activities" in both statutes. Thus, the "unlawful narcotic or dangerous drug activity" that is referenced in ORS 163.575(1)(b) (1971) is the "criminal activity" defined by *former* ORS 167.207(1), actions whereby a person "manufactures, cultivates, transports, possesses, furnishes, prescribes, administers, dispenses or compounds" a narcotic or dangerous drug. The subsequent amendments to ORS 163.575(1)(b) do not suggest any legislative change of heart as to the scope of the "unlawful activity" in the place of endangerment. Thus, defendant's act of possessing controlled substances before entering the automobile was "unlawful activity involving controlled substances" under ORS 163.575(1)(b).

The legislative history of ORS 163.575(1)(b) supports reading the statute *in pari materia* with the criminal activities in drugs statute. That history includes the commentary of the legislatively appointed commission that drafted the proposed criminal code revision. Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report (July 1970). Oregon courts have relied in the past on that commentary as evidence of the meaning intended by the legislature in the adoption of particular parts of the law. *See, e.g., State v. McBride*, 352 Or 159, 164, 281 P3d 605 (2012) (relying upon commentary and commission minutes in construing the meaning of "permits" in ORS 163.575(1)(b)); *see also State v. White*, 341 Or 624,

639 n 7, 147 P3d 313 (2006) (concluding that official commentary is determinative of legislative intent).

The commentary to section 177, the part of the proposal ultimately adopted and codified as ORS 163.575(1)(b), states:

"Paragraph (b) prohibits allowing a person less than 21 years old to enter or remain on premises where unlawful drug activity is conducted or maintained. If a minor is sold or given illegal drugs, or if the actor maintains a place resorted to by drug users or used for the unlawful keeping or sale of drugs, the crime of criminal activity in drugs or criminal drug promotion would be committed (Art. 31)."[7]

Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report §§ 177, 178 (July 1970). The commission also noted that the child-welfare-endangerment statute "is designed to provide coverage for specific acts * * * not specifically prohibited elsewhere." *Id.* That commentary suggests an intent to criminalize particular acts that expose children ("specific acts * * * not specifically prohibited elsewhere") to the conducting or maintenance of drug activities otherwise proscribed in the law, including the maintenance of "a place * * * used for the unlawful keeping * * * of drugs." *Id.* at §§ 277, 265. That history supports the classification of *former* ORS 167.207 as a statute related to the child-welfare-endangerment statute and likewise supports the construction of "unlawful activity involving controlled substances" in ORS 163.575(1)(b) as

---

[7] Relatedly, section 277 of the proposed criminal code proscribed criminal drug promotion. It was enacted as part of Oregon Laws 1971, chapter 743, with a slight modification, and was codified at ORS 167.222 (1971). That statute provided:

"(1) A person commits the crime of criminal drug promotion if he knowingly maintains, frequents, or remains at a place:

"(a) Resorted to by drug users for the purpose of unlawfully using narcotic or dangerous drugs; or

"(b) Which is used for the unlawful keeping or sale of narcotic or dangerous drugs."

The criminal drug promotion statute was subsequently amended by Or Laws 1974, chapter 43, section 1; Or Laws 1977, chapter 745, section 35; Or Laws 1979, chapter 641, section 1; Or Laws 1991, chapter 67, section 41; Or Laws 1993, chapter 469, section 3; Or Laws 1995, chapter 440, section 16; and Or Laws 1999, chapter 1051, section 160.

including the continuation of possession or "unlawful keeping" of controlled substances.

Based on that construction of ORS 163.575(1)(b), as revealed by the text, context, and legislative history of the provision, and defendant's failure to contest the "enter or remain" and "place" elements of the statute, we conclude that there was sufficient evidence in the record to show that defendant knowingly permitted her children to remain in a place where unlawful activity involving controlled substances was maintained. Accordingly, the trial court did not err in denying defendant's motion for judgment of acquittal.

Affirmed.

**HASELTON, C. J.,** concurring.

The constituent components of the majority opinion's *PGE/Gaines* deconstruction are (at least for me) ultimately, abstractly, unassailable. Accordingly, I concur in the disposition. Nevertheless, with due regard for the majority's closely reasoned treatment, I write separately to highlight some frankly troubling features of our holding.

*First,* our result—that a parent's mere surreptitious possession of drugs in his or her child's presence violates ORS 163.575(1)(b)—is arguably inconsistent with that statute's legislative intent, as elucidated in *State v. McBride,* 352 Or 159, 281 P3d 605 (2012). There, the Supreme Court explained that ORS 163.575 was "'designed to provide coverage for *specific acts injurious to the welfare of minors* not specifically prohibited elsewhere'" in the Oregon Criminal Code. *Id.* at 164 (quoting Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 177, [178] (July 1970)) (emphasis added). The court further noted that the statute was intended "to criminalize conduct that previously was proscribed as 'contributing to the delinquency of a minor,' but to do so with sufficient specificity to avoid unconstitutional vagueness." *Id.; see also id.* at 168 ("ORS 163.575(1)(b) proscribes *conduct directed at minors.*" (Emphasis added.)).

It is problematic, at least, to deem a parent's mere possession of a controlled substance of which a child is unaware to be conduct "injurious to the welfare" of the child or "conduct directed at" the child. Nor does it appear that a parent's surreptitious possession of a controlled substance in a child's presence constituted "contributing to the delinquency of a minor" under that (now-repealed) statutory scheme;[1] certainly, there are no reported Oregon appellate decisions relating to such a prosecution.[2]

*Second,* the necessary practical upshot of our holding is that, subject to the prosecutor's charging discretion, a parent who possesses controlled substances while his or her children are present can be convicted not only of possession of a controlled substance, but also of endangering the welfare of a minor. Further, because each of those offenses involves separate victims, the parent is (within the trial court's discretion) subject to the imposition of consecutive sentences. ORS 137.123(5)(b).

*Third,* depending on the proper construction of the term "place" in ORS 163.575(1)(b)—a matter that the majority opinion, perhaps channeling the Supreme Court in *McBride,*[3] silently defers—our analysis sanctions incongruous results. To wit: Under our reasoning, as so unqualified, anywhere a person merely possesses drugs is "a place where unlawful activity involving controlled substances is maintained or conducted." ORS 163.575(1)(b). Thus, if a person who possesses drugs walks into a school, a supermarket, a church, or a synagogue—or, for that matter, our courtroom, Reser Stadium, or the Rose Festival Fun Center—that "place" becomes one in which "unlawful activity involving controlled substances is being maintained or conducted." By extension, to the extent that a parent knows of that possession by some third party (even a stranger) and, nevertheless, permits his or her child (or some child under his or her

---

[1] *Former* ORS 167.210 (1907), *repealed by* Or Laws 1971, ch 743, § 432.

[2] *Accord, e.g., State v. Williams,* 236 Or 18, 386 P2d 461 (1963) (involving furnishing alcohol to a minor); *State v. Iverson,* 231 Or 15, 371 P2d 672 (1962) (engaging in sexual conduct with a minor); *State v. Casson,* 223 Or 421, 354 P2d 815 (1960) (bringing minor into association with a person whom the defendant knew was a "vicious or immoral person").

[3] *See* 352 Or at 168 n 6.

control) to remain in that place, the parent violates ORS 163.575(1)(b).[4]

"Slippery slope" scenarios can be facile. Nevertheless, the real—not illusory—"whole" of our holding is greater than the total of its individual, analytic "parts." Lacking a plausible, principled alternative path, correction, if any, "lies not in judicial ingenuity, but in legislative amendment." *Grijalva v. Safeco Ins. Co.*, 153 Or App 144, 158, 956 P2d 995 (1998), *rev'd on other grounds*, 329 Or 36, 985 P2d 784 (1999) (Haselton, J., concurring).

---

[4] That is so because, under ORS 163.575(1)(b), the defendant need not have been personally engaged in "unlawful activity involving controlled substances"; rather, the gravamen of the offense is simply knowingly permitting a child to remain in the "place" where such activity is being "maintained or conducted."