TOOKEY, J.
*224 *705 Defendant appeals a judgment of conviction for unlawful delivery of methamphetamine (Count 1), ORS 475.890, and endangering the welfare of a minor (Count 4), ORS 163.575. Defendant raises six assignments of error. For the reasons that follow, we affirm.
Defendant first assigns error to the trial court's failure to acquit defendant, sua sponte , on the count of endangering the welfare of a minor. We state the facts relevant to that assignment "in a light most favorable to the state." State v. Reynolds , 250 Or.App. 516, 518, 280 P.3d 1046, rev. den. , 352 Or. 666, 293 P.3d 1045 (2012). Based on an affidavit submitted by Deputy Gil Datan, a detective with the South Coast Interagency Narcotics Team (SCINT), a magistrate issued a search warrant for defendant's property. In that affidavit, Datan stated that an unnamed "Cooperating Individual" (CI) was reliable because, among other things, the CI "was familiar with [defendant] and been present when [defendant] recently had delivered a large amount of methamphetamine or picked up money for methamphetamine," and that the CI "was present at a Coos Bay residence where [defendant] had arrived and delivered at least three ounces of methamphetamine to a known drug distributer." Additionally, the CI had conducted a "controlled buy" of methamphetamine at defendant's residence that was recorded on a "body wire." The affidavit also stated that the CI had no prior felony convictions and was not on probation.
Datan and members of SCINT executed the search warrant at defendant's residence in Coos Bay. When Datan arrived, defendant was not home, but defendant arrived back at his residence as SCINT was executing the warrant. Defendant said he would save Datan the trouble of searching his residence and show Datan "what's in his bedroom." As Datan entered defendant's bedroom, defendant pointed out a small black camera case that contained syringes "consistent with the types of syringes that you'd * * * use to ingest methamphetamine." Datan also found a pipe with methamphetamine residue on the bedroom floor that would have been accessible to defendant's year-and-a-half old child. Datan showed defendant "the large bag of methamphetamine [that *706 had been] sitting on top of the TV" when Datan arrived. The bag contained approximately 27 grams, or 138 "user units" of methamphetamine with an approximate street value of $2,767.
Initially, defendant denied that the large bag of methamphetamine was his, but then told Datan that it was for his personal use. Because of the quantity of methamphetamine that Datan found, Datan suspected that defendant was distributing methamphetamine out of defendant's residence. Defendant told Datan that he did not distribute methamphetamine, but stated that he "could currently go and purchase a pound of * * * methamphetamine" from California. Then defendant indicated that, on his last return trip from California, he had brought back three-fourths of a pound of methamphetamine. Defendant admitted that the methamphetamine that he had purchased on that trip was not all for his personal use. Defendant provided Datan with the name of one of his "customers" and stated that he was supposed to deliver a pound of methamphetamine to that particular customer. Datan placed defendant under arrest and defendant was subsequently indicted for delivery of methamphetamine (Count 1), unlawful possession of methamphetamine (Count 2), child neglect in the first degree (Count 3), endangering the welfare of a minor (Count 4), and frequenting a place where controlled substances are used (Count 5).[1]
At trial, after Datan testified about the execution of the search warrant and his conversation with defendant, defendant moved for judgment of acquittal on Count 1, delivery of methamphetamine, and Count 3, first-degree child neglect. After the state said that it would withdraw the count of child neglect because it did not want to pull its witness out of residential drug treatment, the court granted defendant's motion for judgment of *225 acquittal with respect to Count 3 for first-degree child neglect. The court denied defendant's motion for judgment of acquittal on Count 1, *707 delivery of methamphetamine, based on the inculpatory statements that defendant had made to Datan and the quantity of methamphetamine discovered during the search. On its own motion, the court dismissed Count 5, frequenting a place where controlled substances are used.
The jury found defendant guilty of delivery of methamphetamine (Count 1), unlawful possession of methamphetamine (Count 2), and endangering the welfare of a minor (Count 4). At sentencing, the court merged the guilty verdict on Count 2 with the guilty verdict on Count 1 into a single conviction for delivery of methamphetamine and imposed a 24-month prison sentence. Additionally, the court imposed a concurrent 30-day jail sentence for the conviction on Count 4, endangering the welfare of a minor.
On appeal, defendant raises six assignments of error. As noted, in defendant's first assignment of error, he argues that the trial court plainly erred by failing to acquit defendant, sua sponte , on the count of endangering the welfare of a minor in light of the Supreme Court's recent decision in State v. Gonzalez-Valenzuela , 358 Or. 451, 365 P.3d 116 (2015). Under ORS 163.575(1)(b), a person commits the offense of endangering the welfare of a minor if the person knowingly "[p]ermits a person under 18 years of age to enter or remain in a place where unlawful activity involving controlled substances is maintained or conducted." In Gonzalez-Valenzuela , the court concluded that "the phrase 'a place where unlawful activity involving controlled substances is maintained or conducted,' ORS 163.575(1)(b), refers to a place where a principal or substantial use of the place is to facilitate unlawful drug activity." 358 Or. at 473, 365 P.3d 116. Defendant asserts that "the state failed to prove beyond a reasonable doubt that defendant's residence was principally or substantially used for unlawful drug activity." (Emphasis in defendant's brief.)
The state responds that defendant's assignment of error does not qualify for plain error review because the error is not "obvious." The state contends that " Gonzalez-Valenzuela does not indisputably support defendant's core contention on appeal" because the facts in this case "are distinguishable from [those] in Gonzalez-Valenzuela , and the *708 distinction is material enough to allow a reasonable dispute as to whether that case controls the outcome here." We agree with the state.
As defendant acknowledges, because he did not move for judgment of acquittal on the count of endangering the welfare of a minor, defendant must show that the entry of that judgment of conviction was plain error. We may review an unpreserved challenge to the sufficiency of the evidence as one that is "apparent on the record" under ORAP 5.45(1) if certain conditions are met: "(1) the error is one of law; (2) the error is apparent, in that the legal point is obvious, not reasonably in dispute; and (3) the error appears on the face of the record, such that we need not go outside the record or choose between competing inferences to find it, and the facts that comprise the error are irrefutable." Reynolds , 250 Or.App. at 519-20, 280 P.3d 1046 (brackets, internal quotation marks, and citation omitted). Because "[t]he sufficiency of the evidence is a question of law, and we need not go outside the record or choose between competing inferences to resolve the issue in this case," the question reduces to whether the "legal point is obvious" following the Supreme Court's decision in Gonzalez-Valenzuela . Reynolds , 250 Or.App. at 520, 280 P.3d 1046.
As noted, under ORS 163.575(1)(b), a person endangers the welfare of a minor if the person knowingly "[p]ermits a person under 18 years of age to enter or remain in a place where unlawful activity involving controlled substances is maintained or conducted." In Gonzalez-Valenzuela , the defendant moved for judgment of acquittal, contending, among other arguments, that "a 'place' is one where illegal drug activity 'is maintained or conducted' only if the illegal drug activity occurs regularly at that place." 358 Or. at 453-55, 365 P.3d 116. The Supreme Court agreed, and concluded that "the only reasonable inference" that the record would permit was "that [the] defendant's possession of drugs while in [that] car with her daughters was a *226 brief isolated incident of drug activity" because all that the evidence revealed was that the defendant possessed a small amount of drugs in her purse while she was a passenger in a borrowed car. Id . at 474, 365 P.3d 116. The court held that that evidence was "legally insufficient to satisfy the child endangerment statute." Id . *709 This case is unlike Gonzalez-Valenzuela such that it is not "obvious" that the Supreme Court's holding there compels acquittal here. Reynolds , 250 Or.App. at 520, 280 P.3d 1046. First, unlike the defendant in Gonzalez-Valenzuela , defendant in this case possessed more than a small personal use amount of illegal drugs; defendant had 27 grams, or 138 "user units" of methamphetamine. Second, the drugs were not kept in a container on defendant's person while he was riding in a borrowed car; defendant left 27 grams of methamphetamine at his residence while he was not even present. Third, defendant also left syringes and a methamphetamine pipe at his residence. Fourth, defendant's inculpatory statements indicated that he had recently been involved in selling large quantities of methamphetamine. The difference in those circumstances is such that we conclude that the error, if any, is not "apparent, in that the legal point is [not] obvious," and is "reasonably in dispute," Reynolds , 250 Or.App. at 519-20, 280 P.3d 1046, because a jury could "draw competing inferences from th[ose] facts" as to whether defendant's residence "qualifies as a 'place' where unlawful drug activity is 'maintained or conducted.' " Gonzalez-Valenzuela , 358 Or. at 473, 365 P.3d 116 (quoting ORS 163.575(1)(b) ). Thus, in regard to defendant's first assignment of error, the trial court did not plainly err by failing to sua sponte acquit defendant for endangering the welfare of a minor.
We turn to defendant's remaining assignments of error. In a combined argument, pursuant to ORAP 5.45(6),[2] defendant contends in his second through sixth assignments of error that the trial court erred in denying his discovery request for the audio recording of the controlled buy provided by the CI, the contract between the state and the CI, and the CI's criminal history.
Before trial, defendant moved for discovery regarding the CI. Specifically, defendant asked the court to order the state to provide defendant with the recorded audio from the controlled buy, the CI's contract with the police, and the CI's criminal history so it could be used to attack the CI's *710 reliability and, in turn, Datan's reliance on the CI to establish probable cause. Defendant hoped to use that information as a means to controvert the search warrant affidavit so that he could obtain suppression of the evidence derived from the search. The state responded that it "has a privilege to refuse to disclose the identity" of the CI under ORS 135.855[3] and OEC 510[4] because the CI was reliable and the state was not charging defendant with delivery of methamphetamine from the controlled buy. Defendant requested that the court review the information in camera to assess the CI's reliability and to place the recorded audio from the controlled buy, the CI's contract, and the CI's criminal record "under seal for appellate review."
The trial court denied defendant's discovery motion based upon the state's evidentiary privilege under OEC 510(2) not to disclose an informant's identity, because the court "reasonably believed" that the CI was "reliable or credible." OEC 510(4)(c). The trial court issued a letter opinion stating that "Datan's affidavit sets forth the data furnished by the CI and details sufficient information as to the personal knowledge and veracity of the CI":
*227 "1. The CI's information comes from personal observations of defendant's drug activity and statements by defendant overheard by the CI.
"2. The information provided by the CI is current: 'within the last three weeks', 'within the last two weeks', 'within the last 3 days'. State's Exhibit 1.
"3. The CI observed large quantities of methamphetamines in defendant's residence within the previous two weeks.
"4. The CI is familiar with the appearance, use, packaging and street value of methamphetamine.
*711 "5. The CI has participated in several successful controlled drug buys with SCINT, including one from the defendant when the CI wore a body wire.
"6. The CI made statements against his penal interest concerning the use and possession of illegal controlled substances.
"7. The affidavit discloses that the CI was working under a contract with the state 'to work off other charges.' * * *
"8. The affidavit discloses that the CI has no felony convictions and is not on probation: 'The CI is not a convicted felon and not on probation. The CI has one arrest in 2013 for Unlawful Possession of Methamphetamine but no conviction.' State's Exhibit 1, page 9.
"9. The CI provided extensive details to the affiant as to the location of drugs, scales, packaging materials and drug transactions.
"10. The CI wore a body wire during his recent purchase of drugs from defendant, allowing the state to monitor the drug exchange and confirm defendant's involvement.
"The court is satisfied, based upon the data set forth in Datan's affidavit, that the affiant received information from an informer reasonably believed to be reliable or credible and that a sufficient showing of reliability appears in the affidavit. Therefore the court will not order an in camera review of the body wire, contract or additional criminal history, if any."
Because the court found the information in Datan's affidavit sufficient to establish the CI's reliability, the trial court denied defendant's discovery motion, his motion to controvert the affidavit, and his motion to suppress the evidence derived from the execution of the search warrant.
On appeal, defendant argues that the state's limited governmental privilege under OEC 510 to refuse to disclose the identity of a CI does not apply because his "discovery requests did not risk revealing the [CI's] identity and were, instead, aimed at producing the contents and background of the [CI's] communications." Defendant also asserts that it was error for the trial court to refuse to conduct an in camera review of the requested material or to place the requested *712 material under seal for appellate review. The state responds that "[a]ll of the requested evidence fell within the ambit of OEC 510" and "was all privileged under OEC 510 because all of it risked revealing the CI's identity."
As noted, OEC 510(2) provides that "[a] unit of government has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of law to a law enforcement officer[.]" OEC 510(4)(c) provides, in part, that the privilege does not exist "[i]f information from an informer is relied upon to establish the legality of the means by which evidence was obtained and the judge is not satisfied that the information was received from an informer reasonably believed to be reliable or credible." Information that would reveal the identity of the informant "may be disclosed, even for an in camera disclosure, only if the trial court 'is not satisfied that the information was received from an informer reasonably believed to be reliable or credible.' " State v. Young , 108 Or.App. 196, 206, 816 P.2d 612 (1991), rev. den. , 314 Or. 392, 840 P.2d 710 (1992) (quoting OEC 510(4)(c) ). "If disclosure of the identity of the informer is made in camera , the record thereof shall be sealed and preserved to be made available to the appellate court in the event of an appeal, and the contents shall not otherwise be revealed without consent of the government unit." OEC 510(4)(c).
We disagree with defendant's contention that the trial court "erred, as a matter *228 of law, by concluding that the privilege applied" because "the court applied the privilege before finding or considering whether defendant's requests would even reveal the informant's identity and implicate [ OEC 510 ]." OEC 104(1) provides that "[p]reliminary questions concerning the * * * existence of a privilege * * * shall be determined by the court." We review the trial court's determination that a privilege applied for legal error. State v. Langley , 314 Or. 247, 263, 839 P.2d 692 (1992), adh'd to on recons. , 318 Or. 28, 861 P.2d 1012 (1993). "On review of an OEC 104(1) ruling, this court accepts reasonable factual inferences that the trial judge could have made." Id . at 264, 839 P.2d 692 ; see Rowen v. Gonenne , 274 Or.App. 803, 814, 362 P.3d 694 (2015) (Under OEC 104(1), "[w]here the trial court does not make explicit *713 factual findings, and the evidence would permit the facts to be decided more than one way, we presume that the trial court found the facts consistent with the court's ultimate ruling.").
Here, in denying defendant's discovery motion, the trial court concluded that "the identity of the informer is privileged" under OEC 510. (Emphasis added.) Implicit in the trial court's ultimate ruling not to order the disclosure of the recording of the controlled buy, the contract between the state and the CI, and the CI's criminal history, is a finding that the requested information would reveal the identity of the CI and, therefore, the privilege existed in this case. The record is sufficient to support such an implicit finding. In the court's letter opinion, the court agreed with the state's contention "that the affidavit contains sufficient data demonstrating the reliability of the CI and that to disclose specifics from the body wire, contract and criminal history of the CI will compromise or 'out' the CI." Moreover, the trial court's oral ruling that defendant's discovery request "would gut the informant privilege entirely," and statement that "the body wire is going to * * * tell [defendant] who the informant is," indicates that the court decided that providing the requested information to defendant would reveal the informant's identity. We conclude that the court determined that defendant's discovery requests risked revealing the informant's identity and, thus, the court did not commit legal error in concluding that the privilege existed.
Defendant does not challenge the trial court's further determination that the affidavit contained sufficient information to establish the CI's reliability and credibility.[5] Nevertheless, defendant contends that the court "erred by failing to conduct an in camera hearing of the recorded audio of the controlled buy" and "by failing to take the requested material under seal for appellate review." However, under *714 the terms of the statutory scheme, the court was not required to order the state to disclose the identity of the informant, review the requested information in camera , or seal and preserve any record thereof for appellate review, because the trial court was "satisfied that the information was received from an informer reasonably believed to be reliable or credible." OEC 510(4)(c). See Young , 108 Or.App. at 206, 816 P.2d 612 (trial court did not err in denying the defendant's motion to disclose the informant's identity, including for an in camera disclosure, because the trial court determined that the CI was credible and the information supplied was reliable); OEC 510(4)(c) ("If disclosure of the identity of the informer is made in camera , the record thereof shall be sealed and preserved to be made available to the appellate court in the event of an appeal" (emphasis added)).[6] Thus, *229 the trial court did not err in denying defendant's discovery requests.
Affirmed.

The delivery of methamphetamine charge was based on a theory of constructive delivery in light of the quantity of methamphetamine found and defendant's inculpatory statements; as discussed below, that charge was not based on the CI's controlled buy of methamphetamine from defendant.

ORAP 5.45(6) provides, in part, that, "[i]f several assignments of error present essentially the same legal question, the argument in support of them may be combined so far as practicable."

ORS 135.855(1)(b) provides that "[t]he identity of a confidential informant" shall not be subject to discovery "where the identity of the informant is a prosecution secret and failure to disclose will not infringe the constitutional rights of the defendant."

As we explain in more detail below, OEC 510(2) provides that the government has a privilege to withhold the identity of an informant. OEC 510(4)(c) provides that the privilege does not exist if the information from an informer is relied upon to obtain a search warrant and "the judge is not satisfied that the information was received from an informer reasonably believed to be reliable or credible."

See State v. Alvarez , 308 Or. 143, 148-49, 776 P.2d 1283 (1989) (declarations against penal interest by CI contribute to the reliability of the CI); State v. Bostwick , 226 Or.App. 57, 65, 202 P.3d 259, rev. den. , 346 Or. 589, 214 P.3d 821 (2009) (reliability of CI established by CI providing detailed information that is independently corroborated); State v. Middleton , 73 Or.App. 592, 596, 700 P.2d 309, rev. den. , 299 Or. 522, 702 P.2d 1112 (1985) (CI's cooperation in "controlled buy" was "persuasive evidence" of CI's reliability).

We agree with the trial court's observation in its letter opinion that "OEC 510(4)(c) is not intended * * * to be used as a discovery tool." Rather, the text of OEC 510(4)(c) indicates that the purpose of OEC 510(4)(c) is to ensure that the trial court is satisfied, for purposes of establishing that an affidavit provides sufficient probable cause to issue a search warrant, that "the information was received from an informer reasonably believed to be reliable or credible." See Laird C. Kirkpatrick, Oregon Evidence § 510.03, 425 (6th ed. 2013). ("Rule 510(4)(c) is intended to ensure that a judge is able to make the ultimate determination of whether probable cause for a search existed rather than relying entirely upon the testimony of law enforcement officers that there was a reliable informer.")