SHORR, J.
*323 *775 Defendant appeals a judgment of conviction for unlawful possession of methamphetamine (Count 1), ORS 475.894 (2015), amended by Or. Laws 2017, ch. 706, § 15, and endangering the welfare of a minor (Count 2), ORS 163.575.[1] Defendant assigns error to the trial court's ruling denying his motion for a judgment of acquittal on Count 2. As explained below, we conclude that the court erred when it denied defendant's motion. Accordingly, we reverse defendant's conviction on Count 2 and remand for resentencing but otherwise affirm.[2]
Because we are reviewing the denial of a motion for a judgment of acquittal, we state the relevant facts in the light most favorable to the state. State v. Reynolds , 250 Or. App. 516, 518, 280 P.3d 1046, rev. den. , 352 Or. 666, 293 P.3d 1045 (2012). Douglas County police officers were responding to a report of a disturbance involving shouting and gunshots on a street outside a mobile home park when they encountered defendant outside his mobile home. The officers were concerned that defendant had been involved in the disturbance. The officers requested to search defendant's home for possible victims, suspects, or weapons related to the reported disturbance.[3] Defendant consented to the search. Defendant told the officers that his daughter, an 11-year-old child who resided in the home, was asleep inside. The officers entered and searched the home. Defendant's daughter was asleep on a couch in the living room. Inside defendant's bedroom, the officers spotted what they believed to be a pipe containing methamphetamine residue and three empty "bindles," small plastic bags frequently used to store narcotics. The officers asked defendant if he would unlock a large gun safe in the *776 bedroom, and defendant consented. Inside the gun safe, the officers saw a larger plastic bag containing a white crystalline substance that the officers believed to be methamphetamine, a pair of analog scales used for weighing marijuana, and other pipes.[4] When questioned by the officers, defendant admitted to having methamphetamine in the safe in his bedroom and that the empty "bindles" in his bedroom had, at one point, contained methamphetamine as well. Defendant admitted to smoking some of the methamphetamine from the safe but claimed that it was "bad dope" that "didn't get him high." He also told the officers that he used methamphetamine "almost every day if he can get it," and that he had been "smoking methamphetamine for two to three years." The officers then arrested defendant. The state obtained an indictment against defendant for one count of unlawful possession of methamphetamine, ORS 475.894, and one count of endangering the welfare of a minor, ORS 163.575, based on the allegation that defendant's daughter was in the home concurrently with defendant's possession and apparent use of methamphetamine. *324 At trial, the state presented evidence of the foregoing facts. Defendant then moved for a judgment of acquittal on the child-endangerment charge. Oregon's child-endangerment statute prohibits, among other things, allowing a person under the age of 18 to "enter or remain in a place where unlawful activity involving controlled substances * * * is maintained or conducted." ORS 163.575(1)(b). When making his motion, defendant argued that the state failed to present evidence that his home was a place where unlawful activity involving a controlled substance was maintained or conducted. The trial court concluded that, based on the evidence presented, a jury could reasonably infer that defendant violated the statute because there was evidence that defendant's minor child resided in the house and that defendant routinely used methamphetamine in the house. The court then denied defendant's motion. Subsequently, the jury found defendant guilty of both the unlawful possession and child-endangerment counts. As noted, defendant only *777 assigns error with respect to the trial court's legal decisions on the latter count.
When we review a trial court's ruling on a motion for a judgment of acquittal, we determine whether a rational trier of fact "could have found the essential elements of the crime proved beyond a reasonable doubt." State v. Hall , 327 Or. 568, 570, 966 P.2d 208 (1998) ; State v. Cunningham , 320 Or. 47, 63, 880 P.2d 431 (1994), cert. den. , 514 US 1005, 115 S.Ct. 1317, 131 L.Ed.2d 198 (1995) (we review "questions of sufficiency of the evidence in a criminal case following a conviction by examining the evidence in the light most favorable to the state to determine whether a rational trier of fact, accepting reasonable inferences and reasonable credibility choices, could have found the essential element of the crime beyond a reasonable doubt"). On appeal, defendant reiterates his argument that the state failed to prove that his home was a place where he maintained or conducted activity involving unlawful use of a controlled substance. Accordingly, defendant asserts that a reasonable jury could not have convicted him of endangering the welfare of a minor as defined by the statute, and, as a result, the trial court erred when it denied his motion for judgment of acquittal.
In State v. Gonzalez-Valenzuela , 358 Or. 451, 473, 365 P.3d 116 (2015), the Supreme Court concluded that "the phrase 'a place where unlawful activity involving controlled substances is maintained or conducted,' ORS 163.575 (1)(b), refers to a place where a principal or substantial use of the place is to facilitate unlawful drug activity ." (Emphasis added.) In that case, the defendant was convicted of endangering the welfare of a minor after small quantities of various illegal drugs were found in her purse while she was driving with her minor children in a borrowed car. The defendant moved unsuccessfully for a judgment of acquittal during trial. On appeal, the Supreme Court reversed the judgment convicting the defendant after concluding that the trial court had erred by denying the defendant's motion. The Supreme Court emphasized that the language of the child-endangerment statute focuses on "the harm a minor experiences from being in a particular place associated with drug activity, not from being exposed to particular drug *778 activity." Id. at 472, 365 P.3d 116. In addition, the court explained that the statute refers to the kinds of criminal nuisances associated with drug houses, rather than isolated incidents of drug activity. Id. at 470, 365 P.3d 116. Finally, the court explained that, while it did not decide the full range of facts that can or will satisfy the aforementioned legal standard, "[r]elevant to the determination will be the nature of the activity, its duration or frequency, and the degree to which the activity is an incidental, brief, spontaneous, or isolated occurrence in the particular place, or conversely, the degree to which it has become a quality or characteristic of the place itself." Id. at 473, 365 P.3d 116. With that understanding of the statute in mind, the court concluded that "[n]o evidence in this record would permit a reasonable inference that the car in which defendant was riding was used for drug activity in a way that would make that activity more than an incidental characteristic of the car itself." Id. at 474, 365 P.3d 116.
Applying the statutory text and the Supreme Court's analysis of that text in *325 Gonzalez-Valenzuela to this case, we conclude that the trial court erred in denying defendant's motion for a judgment of acquittal on Count 2, endangering the welfare of a minor. The evidence presented at trial permits an inference that defendant regularly used and stored small quantities of methamphetamine in his bedroom for personal use, and that defendant's minor daughter, who was sleeping in the living room when the police were present, was exposed, at least to some degree, to defendant's drug activity in the house. But that evidence does not permit an inference that defendant's home was a place that was "principally" or "substantially" used to facilitate unlawful drug activity.
The state did not present any evidence that defendant's home had become a place associated with drug activity or that methamphetamine use had become a characteristic of the home. For example, there was no evidence that defendant manufactured methamphetamine in the home, sold or purchased methamphetamine in the home, or opened the home as a place for others to gather and use methamphetamine. Defendant's home was not a "building or locality used for a special purpose" related to methamphetamine *779 consumption, sale, or production, and there was no evidence presented that defendant's personal methamphetamine use in his bedroom rose to the "criminal nuisance standards for drug houses and similar locations." Id . at 473, 365 P.3d 116. Cf. State v. Robertson , 289 Or. App. 703, 709, 412 P.3d 223 (2018) (trial court did not plainly err in failing to acquit the defendant sua sponte for endangering the welfare of a minor when the defendant's inculpatory statement indicated that he had been involved in selling large quantities of methamphetamine and when he had over 130 "user units" of methamphetamine at his residence, more than the "personal use amount" at issue in Gonzalez-Valenzuela ).
Instead, the evidence presented suggests that defendant used his bedroom for personal methamphetamine storage and use but did not otherwise use any part of the house "principally" or "substantially" to facilitate unlawful activities associated with methamphetamine use. Defendant's drug use was regular and certainly more than isolated or spontaneous, but the nature of the drug activity was personal and there was no evidence that the drug activity had become a "quality or characteristic" of the home. See Gonzalez-Valenzuela , 358 Or. at 473, 365 P.3d 116 ; see also State v. Mendoza , 290 Or. App. 461, 412 P.3d 278 (2018) (reversing conviction for endangering welfare of a minor where evidence was legally insufficient to prove that a principal or substantial use of the defendant's home was to facilitate unlawful drug activity).
While we also do not decide the full range of facts that can lead a factfinder to conclude that a particular place is one "where unlawful activity involving controlled substances * * * is maintained or conducted," ORS 163.575 (1)(b), we determine that the particular facts of this case do not permit such a conclusion. Absent additional evidence that a parent's personal use of controlled substances in the home is such that the home has become associated with that activity, or that unlawful drug activity has become a characteristic of the home, the parent cannot reasonably be found guilty of violating ORS 163.575(1)(b) solely by engaging in personal drug use while minor children are also in the home.
In sum, the state failed to present evidence from which a reasonable factfinder could, consistent with the *780 standard announced by the Supreme Court in Gonzalez-Valenzuela , conclude beyond a reasonable doubt that defendant's home was a place where "unlawful activity involving controlled substances is maintained or conducted," ORS 163.575(1)(b). Accordingly, the trial court erred when it denied defendant's motion for a judgment of acquittal on Count 2, endangering the welfare of a minor.
Conviction on Count 2 reversed; remanded for resentencing; otherwise affirmed.

All references to ORS 475.894 in this opinion are to the 2015 version. The version of ORS 163.575 that applies is the one in effect in April 2015, which has since been amended. Or. Laws 2015, ch. 158 § 5; Or. Laws 2017, ch. 21, § 45; Or. Laws 2017, ch. 701, § 18. All references to ORS 163.575 herein are to the 2015 version.

Defendant also raises two assignments of error related to the trial court's instructions to the jury on Count 2. Because we reverse and remand the judgment convicting defendant of that count on other grounds, we do not resolve whether the court erred in that respect.

Ultimately, there was no evidence presented that connected defendant to the gunshots or disturbance near the mobile home park where he lived.

The state does not contend that defendant sold drugs either out of his home or otherwise.