Submitted April 16; conviction on Count 2 reversed and remanded, remanded for resentencing, otherwise affirmed June 9, 2021

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

RONALD GENE TATMAN,
*Defendant-Appellant.*

Clackamas County Circuit Court
17CR21042; A172047

492 P3d 1271

Defendant appeals from a judgment of conviction for unlawful possession of methamphetamine (Count 2) and endangering the welfare of a minor (Count 3). The jury found defendant guilty by a 10-2 verdict on Count 2 and unanimously found defendant guilty on Count 3. Defendant assigns error to the trial court's instruction to the jury that it could return a nonunanimous verdict and to the court's acceptance of the nonunanimous verdict on Count 2. Defendant also assigns error to the court's denial of his motion for judgment of acquittal on Count 3, contending that there was insufficient evidence for a reasonable factfinder to find defendant guilty of endangering the welfare of defendant's minor grandson, who was present in defendant's truck that contained significant quantities of syringes and drug paraphernalia. *Held*: The trial court erred in giving the nonunanimous jury instruction and in accepting the nonunanimous verdict on Count 2. However, the instructional error was harmless as to the unanimous verdict on Count 3. Additionally, the court did not err in denying defendant's motion for judgment of acquittal. Applying *State v. Gonzalez-Valenzuela*, 358 Or 451, 365 P3d 116 (2015), there was sufficient evidence from which a rational factfinder could find that defendant's truck was a place that was substantially used to facilitate unlawful drug activity such that the drug use had become a characteristic of the truck itself.

Conviction on Count 2 reversed and remanded; remanded for resentencing; otherwise affirmed.

Thomas J. Rastetter, Judge.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Stacy M. Du Clos, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jeff J. Payne, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

SHORR, J.

Conviction on Count 2 reversed and remanded; remanded for resentencing; otherwise affirmed.

**SHORR, J.**

Defendant appeals from a judgment of conviction for unlawful possession of methamphetamine, ORS 475.894 (Count 2), and endangering the welfare of a minor, ORS 163.575 (Count 3).[1] The jury found defendant guilty by a 10-2 verdict on Count 2 and unanimously found defendant guilty on Count 3. Defendant assigns error to the trial court's instruction that the jury could reach a nonunanimous verdict and to the court's acceptance of a 10-2 verdict on Count 2. The state concedes the error and acknowledges that the conviction on Count 2 must be reversed. We agree and accept the state's concession. Defendant also assigns error to the court's denial of his motion for judgment of acquittal on Count 3, contending that there was insufficient evidence for a reasonable factfinder to find defendant guilty of endangering the welfare of a minor. As we discuss below, we reject that argument and affirm the judgment on that count. As a result, we reverse and remand the conviction on Count 2, remand for resentencing, and otherwise affirm.

We briefly discuss the legal issues raised by the nonunanimous jury instruction and verdict before we turn to the facts relating to the motion for judgment of acquittal. The trial court, over defendant's objection, instructed the jury that it could return a 10-2 verdict. The court later accepted a unanimous verdict on the charge of endangering the welfare of a minor and a nonunanimous verdict on the charge of unlawful possession of methamphetamine. Defendant contends that the court erred in instructing the jury and that the error was "structural error" such that both counts, including the count that the jury decided unanimously, should be reversed and remanded.

The state concedes error. However, it contends that the error was harmless as to the unanimous verdict and necessitates reversal of the nonunanimous verdict only. We accept the state's concession. It was error for the trial court to instruct the jury that it could return a nonunanimous verdict. The Sixth Amendment to the United States

---

[1] Count 1 was a charge for unlawful possession of heroin, ORS 475.854, and resulted in a mistrial after the jury could not reach a verdict.

Constitution, incorporated against the states under the Fourteenth Amendment, requires a unanimous verdict in cases involving serious offenses. *Ramos v. Louisiana*, 590 US ___, ___, 140 S Ct 1390, 1397, 206 L Ed 2d 583 (2020); *see State v. Ulery*, 366 Or 500, 501, 464 P3d 1123 (2020) ("*Ramos* leaves no doubt that our state's acceptance of nonunanimous guilty verdicts must change * * *."). However, that error was not a structural error and was harmless as to the jury's unanimous verdict on Count 3. *State v. Flores Ramos*, 367 Or 292, 334, 478 P3d 515 (2020). It was not harmless as to the jury's nonunanimous verdict on Count 2. *Ulery*, 366 Or at 504. Therefore, defendant is entitled to a reversal of his conviction on that count.

Defendant also contends that the conviction on Count 3 for endangering the welfare of a minor should be reversed because the trial court erred in denying defendant's motion for judgment of acquittal as to that charge. When reviewing a trial court's denial of a motion for judgment of acquittal, we "view the evidence in the light most favorable to the state to determine whether a rational trier of fact, making reasonable inferences, could have found the essential elements of the crime proved beyond a reasonable doubt." *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998). We state the relevant facts below consistent with that standard.

Clackamas County Sheriff Sergeant Malizia was on patrol shortly after 3:00 p.m. when he was flagged down by a citizen to do a welfare check on the occupants of a black pickup truck parked in a grocery store parking lot. The truck was parked but the engine was running and both the brake and reverse lights were on, indicating that the vehicle was in gear. The driver's side window was missing and replaced by plastic sheeting. The sergeant could see defendant sitting in the driver's seat appearing to look down at a cell phone in his lap. He could also see an adult woman, who turned out to be defendant's daughter, seated in the passenger seat with her head back, mouth open, and eyes closed. Based on Malizia's experience, the woman's posture was similar to those who are passed out due to intoxication.

Malizia tapped on the door and defendant opened it. When defendant opened the door, Malizia "immediately"

saw that the door panel held three uncapped syringes and the bulbous end of what he believed to be a "glass meth pipe" with black, burned residue. Malizia also observed syringes on the floorboard and throughout the driver's compartment. He observed scabs and sores on defendant's face and hands that, based on Malizia's training and experience investigating drug crimes, indicated that defendant used methamphetamine. After some conversation, defendant stated that he had been living in the truck. While Malizia spoke with defendant, he noticed someone in the rear passenger area. Defendant stated that it was his seven-year-old grandson, S. S is defendant's daughter's son. S was standing up and not secured.

Malizia arrested defendant based on Malizia's belief that there was probable cause that defendant had unlawfully possessed methamphetamine. After defendant's daughter and grandson left the truck, Malizia proceeded to search it. On the driver's side of the front portion of the truck cab, Malizia found clear plastic packaging with a dark brown substance that appeared to be heroin, a burned metal dish that Malizia believed to be a drug "cooker," and several small plastic baggies. Between the front seats of the truck and along the floorboard, he found "multiple" additional syringes, some uncapped, and another bulbous glass pipe, broken, with burned residue. The sergeant also found additional syringes, a metal spoon with burned residue, and tin foil with burned residue in the middle console. The sergeant found two additional uncapped syringes and a cut-off straw in the glove box. He found several capped and uncapped syringes in the front passenger area.

The sergeant then searched the rear passenger area where he had seen S unsecured. There, he found two uncapped syringes in the door panel, two uncapped syringes under the seat where S had been standing, and an uncapped syringe on the floorboard. Some of the syringes appeared used. They had dried blood on them and what the officer perceived to be dried heroin residue. Malizia also found additional packages of syringes that were in their original manufacturer's wrapping. Malizia eventually discontinued his search as he found more uncapped syringes because

he became concerned that he would get poked by a needle and risk his health. In total, Malizia believed that he found approximately 30 to 40 syringes inside the truck and that 15 to 20 of those syringes were uncapped.

When Malizia later showed defendant's daughter the uncapped syringes around where her son had been sitting, she began to cry. She later testified, however, that she was legally blind due to diabetic retinopathy. She testified that she had syringes "in [her] own possession" due to her insulin injections. According to defendant's daughter, S was familiar with syringes because he had helped give her insulin. She had been teaching him since he was three years old.

When Malizia asked defendant about the uncapped syringes that were near his grandson in the truck, defendant initially denied knowledge of them and claimed he had let others use his truck. Defendant also replied that the uncapped syringes near his grandson "[made him] mad," but the officer thought he made the statement with a "smirk or a grin" on his face. Later, defendant explained that a dog had gotten into the truck, picked up a package of syringes, and scattered them all over. Defendant stated that he had thought that he had picked them up. He also changed his account that he had been living in the truck by claiming that he was just using it to store things while he lived in a house in Portland.

At trial, defendant also testified that he had loaned his truck to his "on again/off again" girlfriend, Dorothy, who was a drug user. He noticed that, when she returned the truck, it was a "disaster" and had needles inside it. He explained that he had tried to pick up all of the needles but may have missed some of them. He also testified that S had noticed a broken glass pipe at a park the day before the events at issue here so defendant secured the pipe and placed it in the door of the vehicle so S would not cut himself.

The Oregon State Crime Lab later tested two of the items found in the front of the truck and found methamphetamine residue from one of the glass pipes and heroin tar in the recovered plastic packaging.

As noted, defendant moved for a judgment of acquittal at the conclusion of the state's case, contending that there was insufficient evidence for a reasonable factfinder to conclude that he had endangered the welfare of a minor. As relevant to defendant's particular charge, the state was required to prove that defendant knowingly permitted "a person under 18 years of age to enter or remain *in a place where unlawful activity involving controlled substances is maintained or conducted*." ORS 163.575(1)(b) (emphasis added). Defendant argued that, under *State v. Gonzalez-Valenzuela*, 358 Or 451, 473, 365 P3d 116 (2015), the state must prove that the truck in which S was found was a place where "a principal and substantial use of the place is to facilitate unlawful drug activity." Defendant maintained that the state could not show the frequency or degree of any claimed drug use in the truck or that defendant had been in possession of the truck for a long period. The state remonstrated that, given the "sheer amount of drug activity" that the jury could find took place in the truck, the truck itself was akin to a "drug house on wheels" and that drug activity had become a quality or characteristic of the truck itself. The trial court denied defendant's motion, observing that there was evidence that defendant had been living in the truck, there were 30 to 40 syringes located in it, and a reasonable factfinder could conclude that the child was in a place where there was more than just isolated or spontaneous drug activity.

Defendant reprises the argument that he raised in the trial court, namely that the state did not present sufficient evidence from which a rational factfinder could find that the truck where S was located was a place "principally or substantially used for drug activity." We disagree.

We turn to the relevant legal principles. As defendant correctly argued in the trial court, the Supreme Court in *Gonzalez-Valenzuela* construed ORS 163.575(1)(b), particularly the requirement that the state prove that a defendant permitted a minor to enter or remain in "a place where unlawful activity involving controlled substances is maintained or conducted." *Id*. In that case, the defendant and her five-year-old daughter were passengers in a borrowed car driven by the defendant's 17-year-old daughter. *Id*. at

453. While in the car, the defendant had possessed small amounts of heroin, methamphetamine, and methadone in her open purse. After a short bench trial, the defendant was convicted of endangering the welfare of her two minor daughters. *Id.* at 453-54. The Supreme Court concluded that the trial court should have entered a judgment of acquittal. *Id.* at 474. After construing the text, context, and legislative history, the court concluded that the legislature intended ORS 163.575(1)(b)

> "to be defined in reference to the criminal nuisance standards for drug houses and similar locations. Therefore, the phrase 'a place where unlawful activity involving controlled substances is maintained or conducted,' ORS 163.575(1)(b), refers to a place where a principal or substantial use of the place is to facilitate unlawful drug activity."

*Id.* at 473. The court concluded that illegal drug possession, even without any additional affirmative action, could be "unlawful activity involving controlled substances" under ORS 163.575(1)(b). *Id.* at 458-59. However, in applying the above-quoted standard to the facts in that case, the court concluded that the defendant's travel with her daughters in a car while possessing drugs in her purse was "a brief isolated incident of drug activity" that did not make the car in which the defendant travelled a "place" that was principally or substantially used for drug activity. *Id.* at 473-74. Notably, the court stated that there was no evidence from which a reasonable inference could be drawn that the car "was used for drug activity in a way that would make that activity more than an incidental characteristic of the car itself." *Id.* at 474.

*Gonzalez-Valenzuela* did not decide "the full range of facts that can or will satisfy [the] standard," but concluded that relevant factors included "the nature of the activity, its duration or frequency, and the degree to which the activity is an incidental, brief, spontaneous, or isolated occurrence" in the place or "the degree to which it has become a quality or characteristic of the place itself." *Id.* at 473.

Applying *Gonzalez-Valenzuela* and its factors here, we conclude that there is evidence from which a rational factfinder could find that defendant's truck was not simply a

place where incidental, brief, spontaneous, or isolated drug activity occurred. Rather, a factfinder could reasonably find that there was such extensive, prolonged, and regular use of drugs in the truck by defendant that the truck was a place that was, at the least, "substantially" used to facilitate unlawful drug activity and the drug use had become a characteristic of the truck itself. As noted, the officer found approximately 30 to 40 syringes strewn about the truck. The officer estimated that half of those syringes were uncapped and a number appeared used. Several syringes were within reach of the unbuckled child standing on the backseat of the stopped but in-gear truck. The officer also found, throughout the truck, illegal drugs, a broken glass pipe, a second glass pipe, and other paraphernalia that a factfinder, based on all of the evidence, could reasonably find were used for taking illegal drugs.[2] In addition, a factfinder could find, based on defendant's testimony, that defendant had been living in the truck and that the drugs, syringes, and drug paraphernalia were present not just during a short drive but had accumulated and been present over time while defendant lived in the truck. That activity is far from the isolated and incidental possession of drugs in a car that was at issue in *Gonzalez-Valenzuela* and readily surpasses that case's standard for determining whether a place, under ORS 163.575 (1)(b), is principally or substantially used to facilitate unlawful drug activity. 358 Or at 473.

Defendant finally contends that the facts here are similar to those in *State v. Hobbs*, in which we reversed the trial court's denial of a motion for judgment of acquittal on a charge of endangering the welfare of a minor. 290 Or App 773, 775, 416 P3d 322 (2018). In *Hobbs*, the defendant regularly used methamphetamine and stored small quantities

_____

[2] We note that the issue in this case is not whether an officer had probable cause to believe, based on the presence of drug paraphernalia, that illegal drugs would be present. *See, e.g.*, *State v. Sunderman*, 304 Or App 329, 343-44, 467 P3d 52 (2020) (noting that the presence of used and unused glass methamphetamine pipes does not provide probable cause to believe that a defendant currently possessed methamphetamine). This appeal arises out of the denial of a motion for judgment of acquittal. Therefore, the issue in this case is whether a reasonable factfinder, when viewing the evidence in the light most favorable to the state, which evidence included the actual presence of illegal drugs and drug paraphernalia, could find that defendant's truck was principally or substantially used for illegal drug activity.

of methamphetamine, scales, and pipes in a safe in his bedroom. *Id*. at 775-76. There were also some empty bindles in the defendant's bedroom that had contained methamphetamine at one point. *Id*. at 776. The police found the defendant's daughter sleeping on a couch in the living room, a separate part of the house. *Id*. at 775. We held that a factfinder could reasonably find, based on that evidence, that the defendant regularly used and stored small quantities of methamphetamine in his bedroom for personal use, but that that evidence was insufficient to support a finding that the defendant's personal use had made the entire house itself a "place that was 'principally' or 'substantially' used to facilitate unlawful drug activity." *Id*. at 778.

We conclude that the facts in the present case are distinguishable from those in *Hobbs*. Here, as discussed above, there was evidence from which a reasonable factfinder could find that defendant regularly possessed and used drugs in a truck that he lived in; that his passenger, the child's mother, had used drugs in the truck; that defendant's use, including the used and uncapped syringes and discarded drug paraphernalia present throughout the truck, had become a characteristic of the truck itself; and that the child had been within that confined space in immediate proximity to that use and the resulting effects of that use. We therefore reject defendant's argument that the trial court erred in denying his motion for judgment of acquittal.

In sum, we conclude that the trial court erred in instructing the jury that it could return a nonunanimous verdict. That error was not a structural error and was harmless as to the unanimous verdict on endangering the welfare of a minor (Count 3). The error was not harmless as to the 10-2 verdict on unlawful possession of methamphetamine (Count 2), and that conviction must be reversed. In addition, the trial court did not err in denying defendant's motion for judgment of acquittal on the charge of endangering the welfare of a minor.

Conviction on Count 2 reversed and remanded; remanded for resentencing; otherwise affirmed.